UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>     Plaintiff,<br><br>     v.<br><br>**DEONTAE GOODNER,**<br><br>     Defendant. | Case No.: 3:23-cr-56<br><br>Judge Thomas M. Rose<br><br>**SENTENCING MEMORANDUM OF THE UNITED STATES** |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney's Office for the Southern District of Ohio, hereby files the attached sentencing memorandum. This brief is based upon the attached memorandum of points and authorities, the files and records in this case, and any further evidence or argument as may be presented at this defendant's sentencing hearing.

DATED: October 15, 2024

                                                                                                        Respectfully submitted,

                                                                                                        KENNETH L. PARKER
                                                                                                        UNITED STATES ATTORNEY

*/s/ Kelly K. Rossi*
KELLY K. ROSSI (NM 147107)
Assistant United States Attorney
200 West Second Street, Suite 600
Dayton, OH 45402
(937) 225-2910
Kelly.Rossi@usdoj.gov

1

**SENTENCING MEMORANDUM**

Balancing the various section 3553(a) factors—including the nature of the offense, the defendant's background, and his risk of recidivism—the United States respectfully requests that the Court sentence defendant Deontae Goodner to a sentence of 211 months of imprisonment and five years of supervised release.

I. **The Sentencing Guidelines**

The Presentence Investigation Report ("PSR") correctly calculated the advisory Guidelines in this case. Most notably, the PSR properly concluded that a two-level enhancement applies because Goodner possessed firearms, and another two-level enhancement applies because he maintained a premises for the purposes of distributing drugs. (R. 38 at PAGEID 145-146.)

After deducting three points for acceptance of responsibility, Goodner's total base offense level is 33. When the total base offense level of 33 is coupled with a criminal history category of IV, the Guidelines recommend an advisory sentence of 188 to 235 months. (*Id.* at PAGEID 165.)

II. **The Section 3553(a) Factors**

The nature and circumstances surrounding Goodner's offense, as well as his history and characteristics, counsel for a mid-guidelines term of imprisonment of 211 months and five years of supervised release. Goodner's serious history of violence; his use of six loaded firearms; his decision to break into his aunt's house in furtherance of the drug trafficking conspiracy; and his trafficking of fentanyl pills purposefully designed to look like oxycodone all indicate that a significant sentence is needed.

As detailed in the PSR, Goodner was involved in a drug conspiracy that sought to introduce at least two kilograms of fentanyl pills—falsely marked to look like oxycodone—into this

2

community. (R. 38 at PAGEID 165-166.) A third package Goodner was tracking but which—unlike the first two—agents did not intercept, very likely contained a kilogram of fentanyl pills as well. Moreover, Goodner had $70,140 in drug proceeds, suggesting that Goodner was responsible for a great deal of drugs distributed into the community. (R. 30 at PAGEID 85.)

Goodner's conduct is unquestionably serious. It was only due to the diligent efforts of law enforcement that no one overdosed on the intercepted pills, thinking them to be prescription pain killers. A two-milligram dose of fentanyl—similar to five to seven grains of salt, or about the weight of a mosquito—is fatal for an average adult.[1] The Centers for Disease Control and Prevention reported that there were an estimated 107,543 drug overdose deaths in the United States in 2023, and that 81,083 of those deaths involved opioids, principally fentanyl.[2] Between December 2022 to December 2023, an estimated 4,723 people in Ohio died of a drug overdose.[3] Goodner's choice to enter into this fentanyl trafficking conspiracy for his own financial gain may very well have resulted in the loss of life or serious injury to one or more Ohioans.

Adding to the seriousness of Goodner's drug trafficking was his choice to use firearms to protect his deadly drugs as well as to protect his tens of thousands of dollars in drug proceeds. Armed with a loaded semiautomatic rifle and a loaded semiautomatic firearm, Goodner broke into his aunt's house after retrieving the package containing sham fentanyl. (R. 30 at PAGEID 85.) Meanwhile, back at his own house, Goodner had an additional four loaded firearms, along

---

[1] *See* the DEA's "Facts About Fentanyl," *available at*: https://www.dea.gov/resources/facts-about-fentanyl (last accessed October 15, 2024).

[2] CDC statistics show that 74,702 overdose deaths were caused by synthetic opioids and 36,251 were caused by psychostimulants like methamphetamine. *See* the CDC's National Center for Health Statistics, published May 15, 2024, *available at:* https://www.cdc.gov/nchs/pressroom/nchs_press_releases/2024/20240515.htm (last accessed October 15, 2024).

[3] *See* the CDC's "Provisional Drug Overdose Death Counts," *available at:* https://www.cdc.gov/nchs/nvss/vsrr/drug-overdose-data.htm (last accessed October 15, 2024).

with several loaded magazine attachments. (*Id.*) While it is difficult to determine an exact number of Americans killed or injured by guns specifically in relation to drug trafficking, the DEA has concluded that the vast majority of identified criminal drug networks are engaged in gun violence.[4] Data from the CDC shows that communities with high drug trafficking activity often experience significantly higher rates of gun violence, suggesting a strong causal relationship between the two.[5] To put this in context, in 2023—the most recent year with complete data available—46,728 Americans were killed by gun violence, which is the third-highest number of gun-related deaths ever recorded in the United States.[6] And, for every person who dies by firearm, more than two survive, further illustrating the scope of the impact of gun violence on society.[7] Goodner's decision to traffic fentanyl with an arsenal of firearms put the entire community at risk.

Importantly, this is far from Goodner's first brush with the law. As detailed in the PSR, Goodner had ten juvenile adjudications, almost all of them for assault. (R. 38 at PAGEID 147-151.) When he was sixteen years old, he was charged and convicted as an adult for aggravated

---

[4] *See* "DEA Launches New Initiative to Combat Drug-Related Violence and Overdoses in Communities across America," February 2022, *available at*: https://www.dea.gov/press-releases/2022/02/08/dea-launches-new-initiative-combat-drug-related-violence-and-overdoses (last accessed October 15, 2024.

[5] *See, e.g.*, Semenza DC, et al., "Reciprocal Neighborhood Dynamics in Gun Violence Exposure, Community Health, and Concentrated Disadvantage in One Hundred US Cities." Journal of Urban Health. 2023 Dec 100(6). *Available at*: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC10728405/ (last accessed October 15, 2024).

[6] *See* "Continuing Trends: Five Key Takeaways from 2023 CDC Provisional Gun Violence Data," John Hopkins Bloomberg School of Public Health September 2024, *available at:* https://publichealth.jhu.edu/center-for-gun-violence-solutions/2024/continuing-trends-five-key-takeaways-from-2023-cdc-provisional-gun-violence-data#:~:text=The%20CDC's%20data%20shows%20that,violence%20in%20a%20single%20year (last accessed October 15, 2024).

[7] *Se*e "Gun Violence: The Impact on Society," July 2024, NIHCM, *available at*: https://nihcm.org/publications/gun-violence-the-impact-on-society (last accessed October 15, 2024).

robbery and sentenced to five years in prison. (*Id*. at 151.) In that case, Goodner and others held a gun to the victim's head after breaking into the victim's store. (*Id*.) Goodner's use of weapons continued while he was incarcerated; in addition to accruing prison rule violations for, among other things, destruction of property, physically harming others, possession of drugs, and fighting, Goodner was also found to possess a weapon, ammunition, explosive, or incendiary device. (*Id*. at 152.)

Later, while out on parole relating to his aggravated robbery conviction, Goodner committed burglary and, on June 7, 2012, was sentenced to five years' supervision. (*Id*. at 153.) Merely two months later, on August 8, 2012, he violated his supervision and was sentenced to eighteen months in prison. (*Id*.) Ultimately, his probation was terminated unfavorably. (*Id*.) In addition to these aggravated robbery and burglary convictions, Goodner was also convicted for attempting to sell heroin, for which he received a sentence of 180 days in jail. (*Id*.) In sum, Goodner has a significant criminal history involving weapons, violence, and drugs.

While Goodner's crimes are undoubtedly harmful and serious, it is important to note that there is no evidence suggesting that Goodner injured anyone with his weapons. This mitigating factor, along with Goodner's difficult upbringing, support the government's position that a prison term of 211 months—which is a mid-guidelines sentence—is sufficient, and no greater than necessary, to reflect the seriousness of Goodner's crimes, to deter him from future criminal conduct, and to protect the community.

//
//
//
//

**III.     Conclusion**

For the foregoing reasons, the United States respectfully requests that the Court sentence Goodner to a sentence of 211 months' imprisonment followed by a period of supervised release of five years.

 

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

*s/Kelly K. Rossi*
Kelly K. Rossi (NM 147107)
Assistant United States Attorney
200 W. 2nd Street, Suite 600
Dayton, OH 45402
Kelly.Rossi@usdoj.gov